IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ZENITH PETROLEUM CORPORATION,
 Plaintiff,

v.                 Case No. 6:13-CV-1175-JTM

DAVID R. STEERMAN,
 Executor for the Deceased Earlene H. Steerman,
 Defendant and Third Party Plaintiff

v.

VERNON L. SMITH & ASSOCIATES, INC.,
 Third-Party Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Zenith Petroleum Corporation seeks monetary damages from defendant David R. Steerman, the executor for the deceased Earlene H. Steerman, for alleged breach of warranty of title and slander of title. Dkt. 1. As a result of Zenith's suit, Steerman filed suit against third-party defendant Vernon L. Smith & Associates, Inc., on the grounds of negligent misrepresentation, mutual mistake, and unilateral mistake. Dkt. 15. This matter is before the court on Smith's motion for summary judgment. Dkt. 55. For the reasons stated below, Smith's motion is granted in part and denied in part.

**I. Factual and Procedural Background**

The court recognizes the potential emotion tied up in this case, what, between the retired elderly schoolteacher Mrs. Earlene Steerman, the fast-talking landman from Oklahoma, and an interest in one of this world's most coveted possessions: oil. But, when all emotions are removed, the facts of this case are really quite simple.

1

According to the Complaint, on September 22, 2005, Mrs. Earlene Steerman[1] entered into a five-year oil and gas lease with Explore Energy Corporation (hereinafter "Lease 1"). This lease was recorded in the county property records and was scheduled to expire on September 22, 2010. Explore later assigned the lease to plaintiff, Zenith Petroleum Corporation. The relevant portion of that lease read as follows:

> 1.  [Mrs. Steerman], for and in consideration of One Dollar ($1.00) and other valuable consideration in hand paid, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained, does hereby grant, let and lease exclusively unto [Zenith] all of the oil, gas and the constituents of either in and under the lands hereinafter described ("Leasehold"), together with the exclusive right and privilege on and from the Leasehold, to; (1) explore by geophysical, seismic and other methods; (b) drill, mine, operate for, produce, store, remove, and market oil and gas and their constituents; (c) use oil and gas free of cost in operations thereon; (d) conduct seismic surveys and other survey, lay pipelines, set meters or compressors and to transport by pipelines on or otherwise across and through the Leasehold oil and/or gas and/or their constituents from said land and other lands, regardless of the source of said products or the location of said wells; (e) build, maintain, repair, and remove access roads in connection with any of the foregoing operations; (f) install and remove tanks, equipment, telephone and electric poles, and ancillary structures to carry on any of the aforesaid operations; and (g) enter thereon at all times for any of the aforesaid purposes and to occupy, possess and use so much of the Leasehold as is necessary and convenient for all purposes described herein.
>
> . . .
>
> 9.  [Mrs. Steerman] hereby warrants and agrees to defend the title to the oil, gas and the constituents of either, in and under said lands and agrees that [Zenith], at its option, may pay and discharge any taxes, mortgages, or other liens existing, levied, or assessed on or against the oil, gas and the constituents of either or said lands or the production therefrom, and in the event [Zenith] exercises such option, it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself from any payments due hereunder to [Mrs. Steerman].

Dkt. 1-1, at 2.

---

[1] Mrs. Steerman passed away on July 15, 2014. Dkt. 50. Her son and executor of her estate, David R. Steerman, was substituted as the defendant and third-party plaintiff on December 4, 2014. Dkt. 53.

On September 9, 2010, just days before Lease 1 was set to expire, Zenith and Mrs. Steerman entered into a two-year extension. Zenith did not record this extension. However, on February 1, 2012, seven months before the extension's expiration, Mrs. Steerman leased the same tract of land to third-party defendant Vernon L. Smith & Associates ("hereinafter Lease 2"). Lease 2 contained nearly identical language to Lease 1:

> 1. That [Mrs. Steerman], for and in consideration of the sum of <u>One and more (+$1.00) Dollars</u> in hand paid and of the covenants and agreements hereinafter contained to be performed by [Smith], has this day granted, lease, and by these presents does hereby grant, lease, and let exclusively unto [Smith] the hereinafter described land, with any reversionary rights therein, and with the right to utilize this lease or any part thereof with other oil and gas leases as to all or any part of the lands covered thereby as hereinafter provided, for the purpose of carrying on geological, geophysical and other exploratory work thereon, including core drilling and the drilling, mining, and operating for, producing and saving all of the oil, gas, gas condensate, gas distillate, casinghead gasoline and their respective constituent vapors, and all other gases, found thereon, the exclusive right of injecting water, brine, and other fluids and substances into the subsurface strata, and for constructing roads, laying pipe lines, building tanks, storing oil, building power stations, electrical lines thereon necessary or convenient for the economical operation of said land alone or conjointly with neighboring lands, to produce, save, take care and other structures of, and manufacture all of such substances, and the injection of water, brine, and other substances in to the subsurface strata, said tract of land being situated in the County of Gove, State of Kansas . . . .
>
> . . .
>
> 10. [Mrs. Steerman] hereby warrants and agrees to defend the title to the land herein described and agrees that [Smith], at its option may pay and discharge in whole or in part any taxes, mortgages, or other liens existing, levied, or assessed on or against the above described funds and, in the event it exercises such option it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying to the discharge of any such mortgage, tax or other lien, any royalty accruing hereunder.

Dkt. 1-3, at 2. Smith paid $32,000 for Lease 2 and promptly recorded it.

Zenith ultimately chose not to explore for oil and gas on Mrs. Steerman's land and, sometime prior to the expiration of the extension, entered into negotiations with Empire Energy

Corporation to sell a block of its Kansas leases, including Lease 1. During these negotiations, Zenith and Empire learned of Lease 2. Zenith contacted Smith in an attempt to remedy the situation, to no avail. Empire subsequently purchased numerous leases from Zenith, but excluded the lease on Mrs. Steerman's property.

On May 6, 2013, Zenith filed suit against Mrs. Steerman, alleging *only* "breach of the warranty provision contained in paragraph 9" of Lease 1 and slander of title. Dkt. 1, at ¶¶ 11, 12. On January 7, 2014, Mrs. Steerman filed a Third-Party Complaint against Smith, alleging negligent misrepresentation, mutual mistake, and unilateral mistake. Dkt. 15. Ten months later, on October 7, 2014, Zenith sought to amend its Complaint to add Smith as an additional defendant. This motion was denied. Dkt. 49. On January 30, 2015, Smith filed a Motion for Summary Judgment on Steerman's claim of negligent misrepresentation on the grounds that Smith cannot be liable to Steerman because Steerman cannot be liable to Zenith either for breach of warranty and/or slander of title. Dkt. 55.

## II.     Legal Standard for Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Communs.*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir.

2005). These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits – conclusory allegations alone cannot survive a motion for summary judgment. *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores*, 144 F.3d 664, 670 (10th Cir. 1998)). The court views all evidence and reasonable inferences in the light most favorable to the non-moving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III.   Analysis

**A.   Actual Claims**

At the outset, there appears to be some general confusion as to the actual claims in this case. Zenith's Complaint, which is minimal, alleges, at best, only two claims: breach of warranty of title and slander of title. Dkt. 1. Nowhere in the Complaint is there *any* reference to breach of the contract (meaning Lease 1) as a whole. In fact, the only language that could possibly be construed as a breach of contract claim is in paragraph 10 where Zenith claims that, during the course of its negotiations with Empire, the parties "discovered that on February 1, 2012, [Mrs. Steerman] breached its *extension* by entering into an Oil and Gas Lease with [Smith], covering the same property and commencing on January 26, 2012, for a period of three years." Dkt. 1, at ¶ 10 (emphasis added).

However, somehow, in the Pretrial Order, issued on January 15, 2015, Zenith's claims are listed as "Breach of Warranty/Contract" and "Slander of title/Cloud on title." Dkt. 54, at 5. This is the case even though, in the "Contentions of Plaintiff" section, there is absolutely no mention of a breach of contract claim. In its response to the motion for summary judgment, Zenith capitalizes on the use of the word "contract" in the Pretrial Order and proceeds to argue

its claims for breach of contract as a whole as well breach of the exclusivity provision of Lease 1.  Dkt. 62.

This court is keenly aware of the fact that "when an issue is set forth in the pretrial order, it is not necessary to amend previously filed pleadings because the pretrial order is the controlling document for trial."  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002)).  However, even in the Pretrial Order, there is no mention of breach of contract, either in relation to a breach of the exclusivity provision or otherwise.  In fact, other than its mention in the single bullet point under "Legal Claims of Plaintiff," there is no mention of the word "contract" *at all* in the pleadings or the Pretrial Order.  There is mention that Mrs. Steerman "breached her extension," but there are no supporting facts as to how, in Zenith's mind, this occurred.  Nor is there any formal claim for breach of contract, or anything this court could even construe as such.  Zenith is using a poor choice of a tack-on word in the Pretrial Order to try and get through what it should have explicitly explained and argued in the first place.  This it cannot do.  The court therefore finds Zenith's claims against Mrs. Steerman to be: (1) breach of warranty of title, pursuant to paragraph 9 of Lease 1; and (2) slander of title/cloud on title.  Accordingly, it is only these claims for which Smith can seek summary judgment with regard to its liability for indemnification.

There is further argument by Zenith and Steerman that Smith's motion should only be considered one for partial summary judgment because it fails to address the two additional outstanding claims that Steerman has raised against Smith: mutual mistake and unilateral mistake.  However, it is clear from a basic reading of the Third-Party Complaint why Smith does not seek summary judgment on these issues: they are no longer viable claims.

In Counts 2 and 3 of the Third-Party Complaint, Steerman seeks "an Order from this Court declaring that the Second Lease is unenforceable and void *ab initio* due to [the mistake of the parties/her unilateral mistake of material fact], and relieving Steerman of all responsibilities under it." Dkt. 15, at ¶¶ 34, 38. However, Lease 2 expired on January 28, 2015, thereby mooting any need for this court to declare it void *ab initio*. It is undisputed that Smith no longer owns the lease. Any order that this court might enter against Steerman would be ineffective against the current owners, who are not party to this suit. Furthermore, as Smith notes, an order declaring Lease 2 void *ab initio* would essentially require Steerman to return the $32,000 she received as consideration for signing the lease. Dkt. 64, at 12 n.6. It does not appear from the pleadings that Smith is seeking such an outcome.

Accordingly, Steerman's Claims 2 and 3 (mutual and unilateral mistake, respectively), contained in the Third-Party Complaint (Dkt. 15) are hereby dismissed as moot.

**B.   No genuine issue of material fact as to whether Steerman breached the warranty of title to Zenith.**

Based on the language of Lease 1, the court finds that Steerman cannot be liable to Zenith for breach of warranty of title.

> In Kansas, there can be no breach of a covenant of title in a warranty deed unless the *third party's* claim is superior to the title or possessory rights of the grantee. In the typical wording of a covenant of warranty, the grantor covenants to warrant and defend the title conveyed by the deed against all *lawful claims* which may be asserted against it. A breach does not occur without a disturbance of possession and eviction under an adverse title which existed *at the time of the conveyance*.

*RAMA Operating Co. v. Barker*, 47 Kan. App. 2d 1020, 1025-26 (Kan. Ct. App. 2012) (internal citations omitted) (emphasis added).

Kansas courts have held that Kansas law is consistent with the majority view on issues concerning warranty of title:

7

> [t]itle defects are not actionable as a breach of warranty unless the grantee has been compelled to yield to such title, or in a situation requiring him or her to do so presently, as a matter of legal duty.  Further, *a covenantee cannot claim a breach of warranty by reason of the existence of an outstanding title in a third party, where such title is not paramount* . . . The general effect of a covenant of warranty is that the grantor agrees to compensate the grantee for any loss which the grantee may sustain by reason of a failure of the title which the deed purports to convey, or by reason of an encumbrance on the title.  In the typical wording of such a covenant, the grantor covenants to warrant and defend the title conveyed by the deed against the *lawful claims* which may be asserted against it.

*Id*. at 1026 (internal citations omitted) (emphasis added).

The facts of this case are similar to those presented in *Petroleum Energy, Inc. v. Mid-America Petroleum, Inc.*, 775 F. Supp. 1420 (D. Kan. 1991).  In *Petroleum Energy*, the lessor entered in a five-year oil and gas lease beginning December 26, 1979.  775 F. Supp. at 1423.  According to the lease, the original lessee, the defendant, had until the end of the day on December 25, 1984, to commence drilling.  *Id*. at 1424.  It did not do so.  *Id*.  It *had*, however, made arrangements with its dirt contractor to prepare the site for drilling prior to the lease's expiration, even though the drilling contractor was unable to begin work until December 30, 1984.  *Id*. at 1426.  On December 28, 1984, the lessor executed a second lease for the same property to the plaintiff.  *Id*. at 1423.  The plaintiff obtained a restraining order on January 2, 1985, enjoining the defendant from further work at the site.  *Petroleum Energy*, 775 F. Supp. at 1424.

Given the extent of the defendant's preparations to the property prior to the expiration of its lease, the District Court found that the defendant's 1979 lease was indeed enforceable and superior to the plaintiff's 1984 lease, and that the lessor breached the defendant's 1979 lease by entering into the plaintiff's 1984 lease.  *Id*. at 1426.

Although it declined to find a breach of warranty of title, given the lessor's genuine mistaken belief as to the expiration of the defendant's lease, the District Court nonetheless noted

8

that, in order for a breach of warranty to occur, there must be a disturbance in possession *and* "the eviction must be under an adverse and paramount title *which existed when the covenant was made*." *Id*. at 1428. The court further held that because there was no eviction under an alleged paramount title *which existed at the time the 1979 lease was made*, the defendant had no cause of action for breach of the warranty of title. *Id*.

Here, Lease 1 was executed on September 22, 2005, and ran for a term of five (5) years, through September 22, 2010. Dkt. 1-1. On September 9, 2010, Mrs. Steerman and Zenith entered into an extension of Lease 1, extending its rights, terms, and conditions for two (2) years, until September 9, 2012. Dkt. 1-2. This means that Zenith had the exclusive lease on the property in question from September 5, 2005, through September 9, 2012. By and through Lease 1 and the extension, Mrs. Steerman warranted and agreed to defend title to the "oil, gas and the constituents of either." Dkt. 1-1, at 2. There is no allegation that, at the time Mrs. Steerman delivered this warranty, either at the inception of Lease 1 *or* at the time the extension was issued, she had anything other than clear title to this land. The *only* way Mrs. Steerman (or her estate) could be liable to Zenith for breach of warranty of title is if Lease 2 was executed *before* the extension. The facts contained in the record show that Lease 2 was executed on January 26, 2012, well after the extension of Lease 1. Dkt. 1-3.

Based on the law and the established facts of record, there can therefore be no genuine issue of material fact that Steerman is liable to Zenith for breach of warranty of title. Because of this finding, Smith cannot be liable to Steerman for negligent misrepresentation. Accordingly, Smith's motion for summary judgment is granted with respect to Zenith's claim of breach of warranty of title.

The court pauses here to note that Steerman has not sought summary judgment against Zenith on the breach of warranty of title claim.  However, in its Response to Smith's Motion for Summary Judgment, Steerman clearly sets forth its position that "[b]ecause Smith does not dispute its potential obligation to indemnify Steerman, Smith's liability is inextricably intertwined with Steerman's and their claims [], at least on this point, must prevail or fail together."  Dkt. 61, at 12.  In other words, Smith cannot be awarded summary judgment without Zenith's claim for breach of warranty also being dismissed.

Steerman therefore requests that, in the event the court grants Smith's motion for summary judgment on Steerman's negligent representation claim, the court *also* dismiss Zenith's claim of breach of warranty of title against Steerman.  It does not appear from the record, however, that the parties, Zenith in particular, have had an opportunity to present any pertinent materials that may relate to this motion for dismissal.  Steerman's request is therefore denied.  The court will, however, entertain a motion for summary judgment from Steerman on this issue if such a motion is submitted within twenty (20) days of this order.

**C.	Slander of Title**

Zenith also maintains a claim for slander of title against Steerman.  In Kansas, slander of title is "a false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, causing injury to that person."  *N. Natural Gas Co. v. L.D. Drilling, Inc.*, 2010 U.S. Dist. LEXIS 103387, at *14-15 (D. Kan. Sept. 29, 2010) (quoting *LaBarge v. City of Concordia*, 23 Kan. App. 2d 8, Syl. ¶ 3, 927 P.2d 487 (1996)).  Malice is defined as "a state of mind characterized by an intent to do a harmful act without a reasonable justification or excuse.  Existence of malice is ordinarily a question of fact, unless the evidence is undisputed." *Saddlewood Downs, LLC v. Holland Corp.*, 33 Kan. App. 2d 185, 196 (Kan. Ct. App. 2004)

10

(quoting *Werdann v. Mel Hambelton Ford, Inc.*, 32 Kan. App. 2d 118, Syl. P14, 79 P.3d 1081 (2003)).

Based on the evidence contained in the record, the court is unable to determine whether or not Mrs. Steerman acted with malice in executing Lease 2. Zenith alleges that Mrs. Steerman and Smith's representative went to the Gove County Courthouse and recorded Lease 2 knowing that Mrs. Steerman "had already given an extension to Zenith and had cashed the check paying for it." Dkt. 62, at 15. Steerman, on the other hand, argues that but for the false representations of Smith's landman as to the validity of Lease 1, she would never have entered into Lease 2. Dkt. 15, at ¶ 26. There is evidence in the record to support both positions.

During her deposition, taken on September 20, 2013, just a few months before she passed, Mrs. Steerman testified that Smith's landman told her that Zenith's extension was not valid because it was not recorded. Dkt. 61-1, at 5-6.[2] It was this assurance, Mrs. Steerman stated, that prompted her to sign Lease 2. Dkt. 61-1, at 6. However, there is also evidence in the record that Mrs. Steerman thought she owed either Zenith or Smith money, since she had executed identical, overlapping leases. Dkt. 61-1, at 5. There is additional evidence, based on the deposition testimony of Smith's landman, that Mrs. Steerman had indicated that she had never been paid for the extension of Lease 1 and was therefore ready to seek alternative opportunities. Dkt. 61-3, at 7-9. This is true despite the fact that the parties have submitted a copy of the cancelled check for the extension, dated September 17, 2010, just eight days after Zenith and Mrs. Steerman entered into the extension. Dkt. 61-7, at 8.

Given the conflicting evidence contained in the record, the court cannot now say that there is no genuine issue of material fact with regard to Zenith's claim of slander of title against

---

[2] The record also contains deposition testimony from Mrs. Steerman's son and grandson that confirms these statements. Dkt. 61-5, at 6; Dtk. 61-6, at 2, Dkt. 62-6, at 10.

Steerman. It therefore cannot be said that, if Zenith were to be successful on this claim, Steerman could not still seek some indemnity from Smith. As such, Smith's motion for summary judgment on this issue is denied.

**IT IS THEREFORE ORDERED** this 22nd day of June, 2015, that Smith's Motion for Summary Judgment (Dkt. 55) is hereby **GRANTED IN PART and DENIED IN PART**. It is **GRANTED** with respect to Zenith's claim of breach of warranty. It is **DENIED** with respect to Zenith's claim of slander of title.

**IT IS FURTHER ORDERED** that Steerman's Claims 2 and 3 (mutual and unilateral mistake, respectively), contained in the Third-Party Complaint (Dkt. 15) are hereby dismissed as moot.

**IT IS FURTHER ORDERED** that, although not currently entered in the record, the court will entertain a motion for summary judgment on behalf of defendant Steerman within twenty (20) days of entry of this order with respect to Zenith's claim of breach of warranty.

**IT IS FURTHER ORDERED** that Zenith's request for a hearing on the motion (Dkt. 63) is denied as moot.

s/ J. Thomas Marten  
J. THOMAS MARTEN,  
CHIEF JUDGE