IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ZENITH PETROLEUM CORPORATION,
  Plaintiff,

v.               Case No. 6:13-CV-1175-JTM

DAVID R. STEERMAN,
  Executor for the Deceased Earlene H. Steerman,
  Defendant and Third Party Plaintiff

v.

VERNON L. SMITH & ASSOCIATES, INC.,
  Third-Party Defendant.


## MEMORANDUM AND ORDER

Plaintiff Zenith Petroleum Corporation seeks monetary damages from defendant David R. Steerman, the executor for the deceased Earlene H. Steerman, for alleged breach of warranty of title and slander of title.  Dkt. 1.  As a result of Zenith's suit, Steerman filed suit against third-party defendant Vernon L. Smith & Associates, Inc., on the grounds of negligent misrepresentation, mutual mistake, and unilateral mistake.  Dkt. 15.  On June 22, 2015, the court granted Smith summary judgment on Steerman's claim of negligent misrepresentation after finding no genuine issue of material fact as to whether Steerman breached her warranty of title to Zenith.  Dkt. 65.  Zenith subsequently filed a Motion for Reconsideration (Dkt. 68), which was denied.  This matter is before the court on Steerman's motion for partial summary judgment. Dkt. 67.  For the reasons stated below, Steerman's motion is granted.

## I.      Factual and Procedural Background

According to the Complaint, on September 22, 2005, Mrs. Earlene Steerman[1] entered into

a five-year oil and gas lease with Explore Energy Corporation (hereinafter "Lease 1").  This

lease was recorded in the county property records and was scheduled to expire on September 22,

2010.  Explore later assigned the lease to plaintiff, Zenith Petroleum Corporation.  The relevant

portion of that lease read as follows:

> 1.      [Mrs. Steerman], for and in consideration of One Dollar ($1.00) and other
> valuable consideration in hand paid, the receipt of which is hereby acknowledged,
> and of the covenants and agreements hereinafter contained, does hereby grant, let
> and lease exclusively unto [Zenith] all of the oil, gas and the constituents of either
> in and under the lands hereinafter described ("Leasehold"), together with the
> exclusive right and privilege on and from the Leasehold, to; (1) explore by
> geophysical, seismic and other methods; (b) drill, mine, operate for, produce,
> store, remove, and market oil and gas and their constituents; (c) use oil and gas
> free of cost in operations thereon; (d) conduct seismic surveys and other survey,
> lay pipelines, set meters or compressors and to transport by pipelines on or
> otherwise across and through the Leasehold oil and/or gas and/or their
> constituents from said land and other lands, regardless of the source of said
> products or the location of said wells; (e) build, maintain, repair, and remove
> access roads in connection with any of the foregoing operations; (f) install and
> remove tanks, equipment, telephone and electric poles, and ancillary structures to
> carry on any of the aforesaid operations; and (g) enter thereon at all times for any
> of the aforesaid purposes and to occupy, possess and use so much of the
> Leasehold as is necessary and convenient for all purposes described herein.
>
> . . .
>
> 9.      [Mrs. Steerman] hereby warrants and agrees to defend the title to the oil,
> gas and the constituents of either, in and under said lands and agrees that [Zenith],
> at its option, may pay and discharge any taxes, mortgages, or other liens existing,
> levied, or assessed on or against the oil, gas and the constituents of either or said
> lands or the production therefrom, and in the event [Zenith] exercises such option,
> it shall be subrogated to the rights of any holder or holders thereof and may
> reimburse itself from any payments due hereunder to [Mrs. Steerman].

Dkt. 1-1, at 2.

---

[1] Mrs. Steerman passed away on July 15, 2014.  Dkt. 50.  Her son and executor of her estate, David R.
Steerman, was substituted as the defendant and third-party plaintiff on December 4, 2014.  Dkt. 53.

On September 9, 2010, just days before Lease 1 was set to expire, Zenith and Mrs. Steerman entered into a two-year extension. Zenith did not record this extension. However, on February 1, 2012, seven months before the extension's expiration, Mrs. Steerman leased the same tract of land to third-party defendant Vernon L. Smith & Associates ("hereinafter Lease 2"). Lease 2 contained nearly identical language to Lease 1:

> 1.     That [Mrs. Steerman], for and in consideration of the sum of <u>One and more (+$1.00) Dollars</u> in hand paid and of the covenants and agreements hereinafter contained to be performed by [Smith], has this day granted, lease, and by these presents does hereby grant, lease, and let exclusively unto [Smith] the hereinafter described land, with any reversionary rights therein, and with the right to utilize this lease or any part thereof with other oil and gas leases as to all or any part of the lands covered thereby as hereinafter provided, for the purpose of carrying on geological, geophysical and other exploratory work thereon, including core drilling and the drilling, mining, and operating for, producing and saving all of the oil, gas, gas condensate, gas distillate, casinghead gasoline and their respective constituent vapors, and all other gases, found thereon, the exclusive right of injecting water, brine, and other fluids and substances into the subsurface strata, and for constructing roads, laying pipe lines, building tanks, storing oil, building power stations, electrical lines thereon necessary or convenient for the economical operation of said land alone or conjointly with neighboring lands, to produce, save, take care and other structures of, and manufacture all of such substances, and the injection of water, brine, and other substances in to the subsurface strata, said tract of land being situated in the County of Gove, State of Kansas . . . .
>
> . . .
>
> 10.     [Mrs. Steerman] hereby warrants and agrees to defend the title to the land herein described and agrees that [Smith], at its option may pay and discharge in whole or in part any taxes, mortgages, or other liens existing, levied, or assessed on or against the above described funds and, in the event it exercises such option it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying to the discharge of any such mortgage, tax or other lien, any royalty accruing hereunder.

Dkt. 1-3, at 2. Smith paid $32,000 for Lease 2 and promptly recorded it.

Zenith ultimately chose not to explore for oil and gas on Mrs. Steerman's land and, sometime prior to the expiration of the extension, entered into negotiations with Empire Energy

Corporation to sell a block of its Kansas leases, including Lease 1. During these negotiations, Zenith and Empire learned of Lease 2. Zenith contacted Smith in an attempt to remedy the situation, to no avail. Empire subsequently purchased numerous leases from Zenith, but excluded the lease on Mrs. Steerman's property.

On May 6, 2013, Zenith filed suit against Mrs. Steerman, alleging *only* "breach of the warranty provision contained in paragraph 9" of Lease 1 and slander of title. Dkt. 1, at ¶¶ 11, 12. On January 7, 2014, Mrs. Steerman filed a Third-Party Complaint against Smith, alleging negligent misrepresentation, mutual mistake, and unilateral mistake. Dkt. 15. Ten months later, on October 7, 2014, Zenith sought to amend its Complaint to add Smith as an additional defendant. This motion was denied. Dkt. 49. On January 30, 2015, Smith filed a Motion for Summary Judgment on Steerman's claim of negligent misrepresentation on the grounds that Smith cannot be liable to Steerman because Steerman cannot be liable to Zenith either for breach of warranty and/or slander of title. Dkt. 55.

In a Memorandum and Order issued on June 22, 2015, in response to Smith's motion for summary judgment, the court found that Zenith had alleged only *two*, not three, claims against Steerman: (1) breach of warranty of title, pursuant to paragraph 9 of Lease 1; and (2) slander of title.[2] The court ruled in favor of Smith, dismissing Steerman's claim for negligent misrepresentation after finding that there was no genuine issue of material fact as to whether Steerman breached the warranty of title contained in her lease to Zenith.

In its order, the court indicated that, based on its findings, it was impossible for Smith to be awarded summary judgment without Zenith's claim for breach of warranty being dismissed.

---

[2] The court declined to issue summary judgment on the slander of title claim, finding that the required element of malice was an issue for the jury. The court also dismissed as moot Steerman's claims of unilateral and mutual mistake.

4

At the time of the order, however, Steerman had not yet filed a motion for summary judgment. The court therefore allowed Steerman to submit a motion for summary judgment on the warranty of title claim within twenty (20) days of its order. Steerman filed her motion on July 10, 2015.

## II.    Legal Standard for Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Communs.*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits – conclusory allegations alone cannot survive a motion for summary judgment. *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores*, 144 F.3d 664, 670 (10th Cir. 1998)). The court views all evidence and reasonable inferences in the light most favorable to the non-moving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

## III.    Analysis

**No genuine issue of material fact as to whether Mrs. Steerman breached the warranty of title to Zenith.**

Based on the language of Lease 1, the court finds that Steerman cannot be liable to Zenith for breach of warranty of title.

> In Kansas, there can be no breach of a covenant of title in a warranty deed unless the *third party's* claim is superior to the title or possessory rights of the grantee. In the typical wording of a covenant of warranty, the grantor covenants to warrant and defend the title conveyed by the deed against all *lawful claims* which may be asserted against it.  A breach does not occur without a disturbance of possession and eviction under an adverse title which existed *at the time of the conveyance*.

*RAMA Operating Co. v. Barker*, 47 Kan. App. 2d 1020, 1025-26 (Kan. Ct. App. 2012) (internal citations omitted) (emphasis added).

Kansas courts have held that Kansas law is consistent with the majority view on issues concerning warranty of title:

> [t]itle defects are not actionable as a breach of warranty unless the grantee has been compelled to yield to such title, or in a situation requiring him or her to do so presently, as a matter of legal duty.  Further, *a covenantee cannot claim a breach of warranty by reason of the existence of an outstanding title in a third party, where such title is not paramount* . . . The general effect of a covenant of warranty is that the grantor agrees to compensate the grantee for any loss which the grantee may sustain by reason of a failure of the title which the deed purports to convey, or by reason of an encumbrance on the title.  In the typical wording of such a covenant, the grantor covenants to warrant and defend the title conveyed by the deed against the *lawful claims* which may be asserted against it.

*Id*. at 1026 (internal citations omitted) (emphasis added).

The facts of this case are similar to those presented in *Petroleum Energy, Inc. v. Mid-America Petroleum, Inc.*, 775 F. Supp. 1420 (D. Kan. 1991).  In *Petroleum Energy*, the lessor entered in a five-year oil and gas lease beginning December 26, 1979.  775 F. Supp. at 1423. According to the lease, the original lessee, the defendant, had until the end of the day on December 25, 1984, to commence drilling.  *Id*. at 1424.  It did not do so.  *Id*.  It *had*, however, made arrangements with its dirt contractor to prepare the site for drilling prior to the lease's expiration, even though the drilling contractor was unable to begin work until December 30, 1984.  *Id*. at 1426.  On December 28, 1984, the lessor executed a second lease for the same property to the plaintiff.  *Id*. at 1423.  The plaintiff obtained a restraining order on January 2,

6

1985, enjoining the defendant from further work at the site.  *Petroleum Energy*, 775 F. Supp. at 1424.

Given the extent of the defendant's preparations to the property prior to the expiration of its lease, the District Court found that the defendant's 1979 lease was indeed enforceable and superior to the plaintiff's 1984 lease, and that the lessor breached the defendant's 1979 lease by entering into the plaintiff's 1984 lease.  *Id*. at 1426.

Although it declined to find a breach of warranty of title, given the lessor's genuine mistaken belief as to the expiration of the defendant's lease, the District Court nonetheless noted that, in order for a breach of warranty to occur, there must be a disturbance in possession *and* "the eviction must be under an adverse and paramount title *which existed when the covenant was made*."  *Id*. at 1428.  The court further held that because there was no eviction under an alleged paramount title *which existed at the time the 1979 lease was made*, the defendant had no cause of action for breach of the warranty of title.  *Id*.

Here, Lease 1 was executed on September 22, 2005, and ran for a term of five (5) years, through September 22, 2010.  Dkt. 1-1.  On September 9, 2010, Mrs. Steerman and Zenith entered into an extension of Lease 1, extending its rights, terms, and conditions for two (2) years, until September 9, 2012.  Dkt. 1-2.  This means that Zenith had the exclusive lease on the property in question from September 5, 2005, through September 9, 2012.  By and through Lease 1 and the extension, Mrs. Steerman warranted and agreed to defend title to the "oil, gas and the constituents of either."  Dkt. 1-1, at 2.  There is no allegation that, at the time Mrs. Steerman delivered this warranty, either at the inception of Lease 1 *or* at the time the extension was issued, she had anything other than clear title to this land.  The *only* way Mrs. Steerman (or her estate) could be liable to Zenith for breach of warranty of title is if Lease 2 was executed *before* the

extension.  The facts contained in the record show that Lease 2 was executed on January 26, 2012, well after the extension of Lease 1.  Dkt. 1-3.

Based on the law and the established facts of record, there can therefore be no genuine issue of material fact that Steerman is liable to Zenith for breach of warranty of title. Accordingly, Steerman's Motion for Partial Summary Judgment is granted.

**IT IS THEREFORE ORDERED** this 4th day of August, 2015, that Steerman's Motion for Partial Summary Judgment (Dkt. 67) is hereby **GRANTED**.

s/ J. Thomas Marten
J. THOMAS MARTEN,
CHIEF JUDGE